## THE WAHKEENA.

### HUBBLE TOWING CO. v. CHARLES R. Mc-CORMICK LUMBER CO. OF DELAWARE.

#### No. 6970.

District Court, W. D. Washington, S. D. March 4, 1931.

See, also (D. C.) 51 F.(2d) 106.

John C. Bowen, of Seattle, Wash., for libelant.

Lillick, Olson & Graham, of San Francisco, Cal., and W. R. Lee, of Tacoma, Wash., for respondent.

The libel is for salvage by the owner of the tugs John Cudahy and Tyee, their masters and crews, for the service rendered the respondent steam schooner Wahkeena and her cargo stranded on the south jetty at the entrance to Grays Harbor August 29, 1928.

The answer of the claimant owner of both vessel and cargo denies that the Wahkeena was in danger of becoming wrecked and, together with her cargo, becoming a total loss.

The answer further alleges:

"That the Steamer 'Wahkeena' left the port of Aberdeen, Washington, at about 11:00 a. m., on August 29, 1928, bound for San Pedro with a load of lumber and lath; that in proceeding to sea, the vessel ran into fog, and shortly thereafter struck the south jetty of the Grays Harbor Bar. The tide at said time was falling, with the result that the port side of said vessel was held against the jetty; the engines were at once reversed and a wireless message sent requesting assistance. * * *

"At 1:55 p. m., the said tug 'John Cudahy' arrived alongside the 'Wahkeena'; the whistles of the 'Wahkeena' having been blown to advise other vessels of her position. At 1:55 p. m., the tug 'Cudahy' ran a wire cable through the starboard chock on the stern of the 'Wahkeena' and endeavored for a period of approximately one hour to release said vessel. At 2:55 p. m., the attempt made by the tug 'John Cudahy' to release the 'Wahkeena' was given up, and the tug 'Cudahy' thereupon moved away from the said 'Wahkeena.' In conducting this operation, no lines were broken. The 'Wahkeena' at this time, had a list to starboard and rested with her port side to the jetty.

"At 5:15 p. m., August 29, 1928, the 'Wahkeena' without any assistance whatever from the tugs 'John Cudahy' and/or 'Tyee' floated free from the said south jetty of the Grays Harbor Bar. That after said vessel floated free, as aforesaid, the tug 'Cudahy' came alongside and put a towline on the bow of said 'Wahkeena' and started to tow said vessel to Aberdeen. The tug 'John Cudahy' in swinging the 'Wahkeena' around permitted the 'Wahkeena's' stern to strike against the Bar. At 7:30 p. m., while the said vessel was being towed to Aberdeen, the tug 'Tyee' came alongside and tied up on the port quarter. While in charge of said tugs, the vessel struck on a mud bank and remained fast on said mud bank for about fifteen minutes. At 9:10 p. m., the vessel was docked at the port dock of Grays Harbor.

"That during all of the times above mentioned, a light off-shore breeze was blowing with a small swell, and during all of the operations conducted by the said tug 'John Cudahy', and the service performed, after the 'Wahkeena' drifted away from the south jetty, there was very little, or any, danger to the said vessel from sinking owing to the fact that she is constructed of wood, and was laden with lath and lumber, and that by reason of said buoyancy, she could have remained afloat. That in passing the lines from the towboat 'John Cudahy' to the 'Wahkeena,' in view of the prevailing conditions, there was no danger whatever to the said towboat owing to the condition of the weather, and the fact that there was a sufficient depth of water and plenty of room for the said towboat 'John Cudahy' to maneuver. * * * And allege that the services to the 'Wahkeena' and her cargo by said tugs 'John Cudahy' and 'Tyee' were performed after the said 'Wahkeena' had floated free from the rocks, as the previous efforts of the tug 'John Cudahy' had been without success in endeavoring to pull the said 'Wahkeena' off the south jetty of the Grays Harbor Bar, and allege that at the time the said tugboats 'John Cudahy' and 'Tyee' placed their lines aboard the said 'Wahkeena,' the work of passing said lines, making the same fast, and getting under headway were without any danger to the said tugs, or any

of their officers or crew; and further allege in this behalf that the said services as performed were merely towage services, and the dangers in performing any such services were those which are ordinarily and customarily encountered by the libelant upon the towing of vessels in and out of Grays Harbor."

CUSHMAN, District Judge (after stating the facts as above).

The evidence does not warrant the court in finding anything in the steps taken to get the tug John Cudahy to go to the relief of the Wahkeena that would render this other than a salvage service.

The following allegation of the libel is undenied: " * * * That the respondent 'Wahkeena' is a steam schooner of the type customarily used in the Pacific Coast lumber trade, and, as libelant is informed, is of wooden construction, and is approximately 213 feet long, 40 feet wide, and 14.3 feet deep, and her registered gross tonnage is 1030.16 tons, and her net is 547. * * * "

The Wahkeena finished loading at Aberdeen, Grays Harbor, and left for San Pedro about eleven o'clock, August 29, 1928, loaded with 1,026,000 feet of lumber, board measure. Outside the harbor, but inside the bar proper, in a dense fog, she grounded broadside on the south jetty which is partly constructed of rock. The tide, with an unusually strong ebb, was running southerly across the jetty and held the Wahkeena upon and against it where, owing to a swell, she began pounding on the jetty. She blew distress signals, and the tug John Cudahy came to her assistance about 2 p. m., and put a line aboard and pulled about an hour, but was unable to pull the Wahkeena off. The John Cudahy then stood by in the dense fog until about 5 p. m. when a line was again put aboard the Wahkeena.

There is a dispute in the testimony as to whether the tug pulled the Wahkeena off the jetty or whether, with the slackening of the tide, she was freed and the tug merely towed her away from the jetty. The preponderance of the evidence is to the effect that the John Cudahy pulled the Wahkeena off the jetty and towed her slowly back towards Aberdeen. After coming out of the fog the tug Tussler and the tug Tyee, the latter a tug also belonging to the libelant, assisted in towing the Wahkeena back to the dock at Aberdeen, which was reached between 9 and 9:30 p. m., August 29, 1928. There was delay in pumping out the Wahkeena, and she submerged after 2 a. m., the next morning.

The Wahkeena had a crew of twenty-eight men aboard. Under the circumstances disclosed, unless the Wahkeena capsized, it appears that the members of the crew were not in great and immediate danger; but if she had done so in the fog with the tide running out to sea across the jetty, she being broadside to the slope of the jetty with a considerable deck load, this danger was by no means unlikely, and it is not improbable there would have been lives lost. Testimony was given that a list of 15 degrees developed and the cargo shifted. Before the Wahkeena was pulled off the jetty the cover was taken off of the available lifeboat, and the crew brought their effects from below.

The claimant seeks to minimize the pounding of the Wahkeena on the jetty. Hansen, the chief officer of the Wahkeena, testifying as to occurrences after the stranding, was asked: "Q. Was the ship pounding at this time? A. Very little."

Testimony was given concerning the wireless messages from the Wahkeena while she was on the jetty, one of which was as follows (Exhibit A–14):

"Wahkeena message: He replied let her come and don't think can get off before high water ship hitting bottom heavily slivers floating up all the time and a big piece of keel just floated up. Operator said could hardly sit in chair hitting so hard. Chief engineer says water flooding generator and it won't be long before it will go off. Also said water getting in oil and it won't be long."

Another message from the Wahkeena was: "Wahkeena says Captain thinks he can't be moved before midnight as we are stuck pretty hard. * * * "

Claimant has further contended that the vessel and cargo were not in great danger, but the evidence convinces the court that they were. A review of all of the evidence upon this question will not be attempted.

After the stranding of the Wahkeena she was not repaired; the owners considering that in view of the expense necessary to repair her it was not justified.

After a month, during which time the owner sought purchasers, she was sold for $5,000, the owner to pay the purchaser bills incurred in pumping the vessel out after it had submerged, which bills aggregated $2,600. Certain equipment, the value of which is uncertain but in any event was less than the pumping charge, had been, before the purchase, removed by the owner. As a part of the sales agreement, the owner also agreed

to buy back for approximately $750 the tail shaft and propeller.

The court can only speculate as to whether the Wahkeena would have come off the jetty with the turn of the tide, and, if so, whether she would have been picked up by some other boat before again stranding, and as to whether the Wahkeena, with no signals other than her bell, would have succeeded in directing vessels to her, or as to whether, without power, she would have been able to have used her anchors in such a way as to prevent her drifting upon the shoals to the north of the harbor entrance, or whether, if freed, she might not have been carried upon the spur projecting northerly from the main jetty nearby the place she was stranded.

The fact that a vessel insured for $125,000 was damaged beyond justifiable repair in four hours pounding on this jetty is alone sufficient, with the other circumstances already stated, to evidence the fact that she was in great danger of, with her cargo, becoming a total loss. After the damage to the vessel the insurance company paid the owner $75,000, and allowed it to retain the vessel.

The danger to the tug John Cudahy was likewise great. Both at the time of pulling on the Wahkeena and during the time the tug was standing by she was in danger of being carried by the set of the tide upon the jetty and the spur. She stood near for three hours in a dense fog. All parts of the jetty were at all times submerged, and the only aid she had in determining her location with relation to the jetty was her compass and the stranded Wahkeena which she could only keep in view by remaining within a few hundred feet of the jetty. That the situation was considered dangerous is evidenced by the fact that, although the stranding was immediately reported at Aberdeen, none other of the numerous vessels on Grays Harbor ventured into the fog near the stranded Wahkeena.

The John Cudahy was purchased in 1927 for $25,000. She had on board, beside the captain, a chief officer, a deck hand, wireless operator, fireman, cook, a pilot named Stream taken off a vessel outbound and being returned to Grays Harbor, and a young man named Campbell who had been invited for the trip out and return with the pilot.

The tug Tyee was built in 1925 at a cost of $45,000. She had a crew of five men.

It is unnecessary to discuss the question of responsibility for the grounding of the Wahkeena as she was being towed back to Aberdeen, as there is nothing in the evidence to show that any damage resulted to her or her cargo as a result of such grounding.

A statement was made by Frank Hubble of the libelant company to Clark, a surveyor for the Board of Marine Underwriters, before the Tyee went to the assistance of the Wahkeena, to the effect that the Tyee was equipped with a pump. It developed after she made fast to the Wahkeena that the hose she had was not long enough for use in pumping the water out of her. Claimant complains because of this.

Uncertainty as to the exact nature of the representations made and as to the sufficiency of any pump which Hubble may have represented the Tyee to have had or Clark, if representing claimant, had reason to believe the Tyee had, renders this complaint ineffectual.

No part of the cargo was jettisoned or lost. The testimony is that the sound value of the cargo at Grays Harbor was somewhat in excess of $18,300; that the freight subsequently paid on this cargo from Grays Harbor to San Pedro was approximately $4,550. After being submerged, it was necessary to discharge the lumber from the raised Wahkeena, tally it, sort it, regrade it, and re-load it. This expense, with dockage and incidental charges in addition to freight, amounted to approximately $1,925. The amount realized by claimant for the lumber was the sound value above stated, less the expense of $1,925.

Claimant has also contended for the allowance of a charge prior to the salvage claim of libelant of an item of approximately $2,600 for the pumping out of the Wahkeena after she submerged. No reasonable explanation has been given for the delay on the part of claimant in pumping out the Wahkeena after she was returned to the dock at Aberdeen. No satisfactory way to determine the amount of the expense in caring for the cargo, added because of permitting the Wahkeena to submerge, after she was brought to the dock, appears. The item for freight in full will be deducted from the sound value of her cargo.

The court concludes that one-half of a just charge for pumping out of the Wahkeena and of the foregoing items totaling approximately $1,925 should, in addition to the amount of freight paid, be deducted from the price received for the cargo.

It is further found that the charge of $2,600 is excessive, and that $500 would be a reasonable amount on account of such pumping.

The fact that the cargo and the vessel were both the property of claimant makes it unnecessary to divide the pumping charge allowed between the vessel and the cargo. If any interests are affected by this, rendering any adjustment of this expense between the two necessary, the question may be presented upon settling the decree.

The court finds and concludes that the libelant is entitled to a total salvage award amounting to fifty per cent. of the price of $5,000 obtained for the unrepaired Wahkeena, plus fifty per cent. of the net amount of approximately $11,325 received for the cargo; that the libelant should receive of this amount on account of the service of the tug Tyee, $300; that the members of the crew of the Tyee should receive the equivalent of five days' wages being then received by them; that the remainder of the salvage award should be apportioned to the tug John Cudahy, her crew, the pilot Stream, and Campbell, the crew of the John Cudahy, the pilot Stream and Campbell to receive twenty-five per cent. of this amount; the crew in proportion to their wages, except that the captain be allowed a proportion double his wages; that the pilot, Stream, receive an amount equal to that received by the chief officer of the John Cudahy, and Campbell an amount equal to that of a deck hand.

Another element not yet discussed has been considered by the court in fixing the amount of the award that should be made. The Wahkeena was built in 1917. Captain Moloney, a marine surveyor, and witness for the libelant, testified that her value before stranding was $35,000. Clark, a marine surveyor and witness for claimant, testified to the same value. As already stated, she was insured for $125,000 on account of which $75,000 was paid the owner, and the owner retained the vessel, sold her, and kept the money received upon the sale. The insurance of a vessel in excess of her value makes her loss rather than her preservation a financial advantage to the owner and thereby removes his incentive to be careful to preserve her, incidentally exposing the crew to a greater risk; a risk that will in nowise be lessened by meager salvage awards in such cases.

Interest at the rate of six per cent. on the awards from the date of stranding will also be allowed.

The decree will be settled upon notice.

The clerk will notify the attorneys for the parties of this decision.